IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

ANNIE B. MIZER,              )
                                   )
      Plaintiff,             )
                                   )
      v.                    )     Case No. 05-1074-CV-W-HFS
                                   )
JO ANNE B. BARNHART,      )
Commissioner of Social Security,   )
                                 )
      Defendant.         )

**MEMORANDUM AND ORDER**

This is a proceeding involving applications under Titles II and XVI of the Social Security Act (the Act). 42 U.S.C. §§ 401, et seq., and §§ 1381, et seq. Plaintiff Annie B. Mizer seeks review of the Commissioner's decision denying her various applications for a period of disability and disability insurance benefits, and supplemental security income benefits. Plaintiff's original applications were denied initially. Tr. 77-81. Plaintiff appealed the denial to an administrative law judge (ALJ). After an administrative hearing, ALJ Gary E. Lowe issued his written decision on June 28, 2002 in which he granted benefits for a closed period of June 10, 2000 through December 31, 2001, but that thereafter, found that plaintiff was not "disabled" as defined in the Act. Tr. 18-24. The Appeals Council of the Social Security Administration denied plaintiff's request for review on June 27, 2003; thus, the decision of the ALJ became final. Tr. 9. After plaintiff appealed the decision to this court, the Commissioner filed a motion to reverse and remand for further proceedings to evaluate plaintiff's intellectual functioning and credibility, evaluate the credibility of plaintiff's husband, reevaluate the medical opinion evidence, and reconsider plaintiff's ability to sustain employment. This court granted the motion, reversing ALJ Lowe's decision and remanding

for further proceedings as requested in the Commissioner's motion. Tr. 392.

While her original applications were pending, plaintiff filed a second application for a period of disability and disability benefits, which was denied initially and for which an appeal to an ALJ was pending. Tr. 498-500, 391. Following the court's remand of the original applications, all of plaintiff's applications were consolidated into one action. After a hearing, ALJ William G. Horne issued his written decision, which resulted in a grant of benefits for the closed period of June 10, 2000 through December 31, 2001, but a denial of benefits thereafter. Tr. 387-402. The Appeals Council denied plaintiff's request for review on October 14, 2005. Tr. 382-84. Accordingly, ALJ Horne's decision now stands as the final decision of the Commissioner. Plaintiff's appeal is currently before this court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## I.    Factual Background

The facts are fully presented in the parties' briefs and will thus be merely summarized here. On August 30, 2000, plaintiff filed her original applications for a period of disability and disability insurance benefits, and supplemental security income benefits. Tr. 117-19, 377-80. On February 19, 2003, she filed her second application for a period of disability and disability insurance benefits. Tr. 498-500. All applications alleged a disability onset date of June 10, 2000, due to anxiety, depression, hyperthyroidism, dyspepsia, anorexia, and a bad tooth. Tr. 133, 507.

Plaintiff's Testimony

Plaintiff was born on April 28, 1965 and was 39 years old at the time of the hearing. Tr. 405. She is married, and she has two children (ages 20 and 22) who no longer live at home. Tr. 422. Plaintiff has a seventh-grade education. Tr. 405-06. School records indicate that plaintiff was enrolled in special education classes for math, reading and writing. Tr. 162-73. She was 16 years

old when she dropped out of school after two unsuccessful attempts to pass the eighth grade.[1]  Tr. 168-69.  She testified that she was molested by the special education teacher[2] and was constantly made fun of at school; she was also molested at home.  Tr. 412.  These issues led her to drop out of school and leave home.  Tr. 412.

She does not read the newspaper or read for enjoyment.  Tr. 413.  When she gets Social Security letters, her husband reads them to her.  Tr. 413.  She has trouble reading, particularly with understanding what she is reading.  Tr. 413-14.  Plaintiff has had trouble sleeping for 7 or 8 years, but if she takes medication to help her sleep, the medication makes her sleep all night and all day and she is unable to remember anything that happened during the day.  Tr. 414, 424.  Plaintiff has difficulty remembering things and has to write anything that she needs to remember on the calendar and repeatedly asks her husband about things.  Tr. 414-15.  She writes what medication to take on each day, because otherwise she will forget.  Tr. 415.  If she watches a 30-minute television program, sometimes she is able to follow the storyline and sometimes she is not.  Tr. 415.

Plaintiff's last job was working in the cafeteria of Western Missouri Medical, a local

---

[1]When plaintiff was 15 years old and before dropping out, school officials administered the Woodcock-Johnson Ability Test and a WISC-R intelligence test.  Tr. 171.  Both tests confirmed that she was functioning on a "retarded level."  Tr. 171.  Notably, plaintiff was on the second-grade level for verbal ability, the third-grade level for reading aptitude, the fifth-grade level for written language, and the third-grade level for knowledge.  Tr. 171.  Her I.Q. scores were 68 for verbal, 81 for performance, and 72 for full-scale.  Tr. 170.
   As part of a consultative mental evaluation on April 4, 2002, Dr. Robert Pulcher, Ph.D., a psychologist, tested plaintiff's intelligence using the Wechsler Adult Intelligence Scale-III (WAIS-III).  Tr. 359-70.  Plaintiff's I.Q. scores were 75 for verbal, 87 for performance, and 79 for full-scale.  Tr. 361.  Dr. Pulcher stated that plaintiff's verbal and full-scale scores "place her within the Borderline Intellectual Functioning level of intelligence," defined as I.Q. scores ranging from 71-84.  Tr. 362.

[2]She thought she was 12 at the time of the molestation, and she never received any counseling, therapy or treatment.  Tr. 420.  The teacher was not prosecuted.  Tr. 420.

3

hospital. Tr. 416. Her duties included doing dishes, picking up trays, sweeping, mopping, picking up trash, and checking to see if the freezers were full. Tr. 415-16. She had problems at work because she forgot to do things, like putting milk in the freezer, which was one of her main duties. Tr. 416-17. Ultimately, the job ended because her boss knew plaintiff was in counseling for depression and "was afraid that I would hurt myself or somebody else" when she was carrying knives or hot food, so the boss asked plaintiff to voluntarily quit. Tr. 416, 423.

During a typical day, plaintiff gets up between 6 and 7:30 a.m., does dishes, vacuums and does laundry. Tr. 417. She said she cooks simple dinner meals 2 or 3 times a week and cooks using recipes. Tr. 417-18, 423. She does not go to church and does not have any hobbies. Tr. 418, 422. She visits her sister, who lives nearby, probably twice a week. Tr. 418. Plaintiff has a driver's license, but she had to take the written test three times before passing. Tr. 420-21. The longest distance she drives is about 30 miles; she has trouble driving and gets lost or forgets where to turn. Tr. 422. She does grocery shopping, but her husband always goes with her because she cannot count change. Tr. 421.

Plaintiff takes Ambien to help her sleep. Tr. 419. She takes Synthroid for her thyroid condition (hyperthyroidism became hypothyroidism following an ablation procedure[3]), alternating

_____

[3]The records reflect that plaintiff had the thyroid radioactive iodine ablation procedure in December 2001. Tr. 20, 353. When asked by the ALJ whether anything happened in December 2001 to make her thyroid condition better, plaintiff said no. Tr. 429. Her failure to remember this procedure tends to corroborate other evidence of seriously impaired memory functioning, notably the results of the Wechsler Memory Scale III, which was administered to plaintiff on November 9, 2000 during a consultative psychological examination by Dr. R. Kenneth Wilcox, Ed.D., a clinical psychologist. Tr. 250-55. Plaintiff tested below the first percentile for Visual Delayed Memory and Auditory Recognition Memory Delayed; she tested at the first percentile for General Memory. Tr. 252-53. She tested in the low average range for Working Memory and Immediate Memory, in the borderline range for Visual Immediate Memory, and in the average range for Auditory Immediate Memory. Tr. 252-53. Dr. Wilcox opined that these results

4

between a 50 mg pill one day and a 75 mg pill the next. Tr. 419-20. She said that her thyroid problem still affects her; she gets shaky, forgets things, gets tired a lot and bruises easily. Tr. 428. Plaintiff has had problems with depression and anxiety for many years. Tr. 418-19. She has taken medication for depression in the past, including Zoloft. Tr. 425. She thinks she last took medication for depression in 2001, but her doctor took her off it because it had too many side effects, like weight loss. Tr. 425. Plaintiff has received counseling for her emotional problems, most recently in 2001. Tr. 426. She attempted suicide (she thinks it was in 2001) by taking an overdose of pills because she was having problems at home. Tr. 426. She has anxiety attacks at least once a week while she is driving. Tr. 426-27. During these attacks, she cannot breathe and she gets really tired and wants to sleep. Tr. 427. On at least two occasions, she has had to pull off the road and someone had to come and get her; in one instance, she was vomiting and had diarrhea as a result. Tr. 427. She said she takes medication for anxiety on an as-needed basis, but she did not remember the medication's name. Tr. 428.

Medical Expert's Testimony

Dr. Joseph Cools, Ph.D., a clinical psychologist, reviewed plaintiff's medical records and offered his medical opinions about the mental condition of plaintiff. After reviewing the records, Dr. Cool opined that plaintiff had been diagnosed with a depressive disorder not otherwise specified and a generalized anxiety disorder with panic attacks. Tr. 432. He noted that she had been prescribed various psychiatric medications in the past and that her psychological condition

---

"reflect chronic memory conditions and do not reflect any ongoing memory loss process." Tr. 252. He also noted plaintiff's "serious memory deficits" are the result of "a long time interaction between chronic mental illness, learning disabilities and an adaptive mechanism designed to hide deficiencies." Tr. 252.

5

(particularly her anxiety disorder) was complicated by her hyperthyroidism. Tr. 432. He opined that plaintiff's depression and anxiety are not of Listing level severity at this point, but they do have more than a minimal effect on her ability to function. Tr. 433-34. He further opined that if plaintiff was in a very low stress job with minimal contact with other people, she could function, but her functioning and performance would deteriorate rapidly and sharply with any increase in stress. Tr. 434-35. In addition, Dr. Cools opined that plaintiff's decreased cognitive functioning, in combination with her memory impairment and other mental limitations, would make her overall limitations "more impressive." Tr. 436. He opined that plaintiff does not retain long-term memory functioning; additionally, although she can read a little bit, she is functionally illiterate. Tr. 436-37. As a result of these issues, Dr. Cools opined that plaintiff could perform very simple, one- to two-step tasks. Tr. 437. Further, he opined that she would need retraining after a period of time because she is unable to retain information over extended periods. Tr. 437. Additionally, he opined that plaintiff would need more supervision on the job than a typical employee would require. Tr. 437. He also opined that the 12-point spread between plaintiff's verbal I.Q. and performance I.Q. was indicative of a learning disorder, exemplified by her difficulty with reading and comprehension. Tr. 437. He opined that any job-related instructions would need to be spoken or demonstrated to plaintiff. Tr. 437-38.

Testimony of Alfred Mizer, Plaintiff's Husband

Mr. Mizer testified that plaintiff can make her own coffee in the morning, but since they got a new coffeemaker, she struggles with getting it set up correctly. Tr. 445-46. He said that he and plaintiff typically share the cooking duties and that dinner usually consists of frozen dinners that can be microwaved. Tr. 447. When the children still lived at home, plaintiff used to attempt to make

6

larger meals with recipes, but between one-third and one-half of the time she would forget that the stove was on and burn the food, or would forget to turn the stove burners off after they had eaten. Tr. 447. Since their youngest child moved out in June 2004, they mostly have microwave dinners. Tr. 448. Mr. Mizer testified that plaintiff has mood swings as a result of taking Synthroid, her thyroid medication. He said that because the doctor keeps changing the dosage, plaintiff will be very aggressive and impulsive one day and then just want to "sit around or lay around" the next day. Tr. 448-49.

## II.    Standard of Review

The scope of this court's review is defined by the Act, which provides that the Commissioner's decision is conclusive if supported by substantial evidence on the record as a whole. Jackson v. Bowen, 873 F.2d 1111, 1113 (8th Cir. 1989); Bates v. Chater, 54 F.3d 529, 531 (8th Cir. 1995); Frankl v. Shalala, 47 F.3d 935, 937 (8th Cir. 1995); Harris v. Shalala, 45 F.3d 1190, 1193 (8th Cir. 1995). While "more than a mere scintilla," substantial evidence is only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). The court will evaluate the entire record, considering not only the evidence which supports the Commissioner's decision, but also that which fairly detracts from it. Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996); Johnson v. Shalala, 42 F.3d 448, 451 (8th Cir. 1994); Turley v. Sullivan, 939 F.2d 524, 528 (8th Cir. 1991). The court will not, however, reverse a decision simply because substantial evidence may support the opposite conclusion. Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995). The court must be satisfied that the ALJ performed his duty to fully and fairly evaluate all the evidence before him. Herbert v. Heckler, 783 F.2d 128, 130-31 (8th Cir. 1986).

7

## III.    Analysis

The Social Security Administration has established a five-step sequential evaluation process for determining disability. 20 C.F.R. §§ 404.1520, 416.920. Step one requires a determination as to whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments as defined in 20 C.F.R. § 404.1520(c). If so, the ALJ should proceed to step three, which asks if the impairment or combination of impairments meets or equals one of a list of specific impairments set out in the regulations. 20 C.F.R. § 404.1520(d). If this requirement is met, the claimant is conclusively presumed disabled; if not, the ALJ should proceed to step four. At step four, the ALJ determines whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(e). If the claimant can perform such work, she is not disabled. If the claimant establishes that she is incapable of performing her past relevant work, the ALJ must show, at step five, that the claimant can perform other substantial gainful work that exists in the national economy. 20 C.F.R. § 1520(f).

In this case, the ALJ proceeded through step four of the five-step analysis. He determined that plaintiff has the following medically determinable impairments:

> anxiety disorder; depression; hyperthyroidism; and borderline intellectual functioning

Tr. 397. The ALJ found that these impairments were severe within the meaning of the Regulations, but concluded that they did not meet the criteria set forth in the Listing of Impairments. Tr. 397; see 20 C.F.R. § 404, Subpart P, App. 1. The ALJ concluded that plaintiff was "disabled" as defined by the Act and entitled to benefits for the closed period of June 10, 2000 through December 31, 2001, as she did not have the mental capacity to perform work-related activities on a sustained basis during

8

that period. Tr. 399.  With regard to plaintiff's assertion of disability from January 1, 2002 through the date of the decision, the ALJ concluded that plaintiff was not disabled and thus was not eligible for disability insurance benefits or supplemental security income.  Tr. 399.  Based on the testimony of a vocational expert, the ALJ further found that plaintiff retained the residual functional capacity to perform her past relevant work as a cleaner or assembly line worker.  Tr. 399.

Plaintiff raises three points of error.  She claims that the ALJ: (1) erred in finding that plaintiff can perform sustained work activities and return to her past relevant work; (2) erred in failing to provide any limitation in her residual functional capacity that was a practical ramification of the ALJ's finding that plaintiff had a moderate impairment in maintaining concentration, persistence or pace; and (3) erred in giving no weight to the vocational expert's testimony at the first hearing that a moderate degree of limitation in concentration, persistence or pace would preclude all work.

### A.    Medical Evidence and Formulation of Residual Functional Capacity

Plaintiff's first and second points of error are closely related and will be analyzed together. She is essentially arguing that the ALJ improperly formulated plaintiff's residual functional capacity by omitting certain non-exertional limitations supported by the medical evidence.  The ALJ's formulation of the residual functional capacity (RFC) included the following non-exertional limitations: "no complex tasks; only simple repetitive tasks; only low stress work; minimal interaction with the public, co-workers, and supervisors; and a limited ability to read, write and do simple math."  Tr. 399.

In his decision, the ALJ found that from January 1, 2002 through the date of the decision, plaintiff had a moderate limitation in maintaining concentration, persistence or pace.  Tr. 397.

9

Plaintiff argues that the ALJ erred in failing to include in the RFC that plaintiff was moderately

limited in maintaining concentration, persistence or pace, or to include any specific limitation that

would constitute a practical ramification of her concentration, persistence or pace deficits. The court

agrees. In Newton v. Chater, the ALJ found that the claimant "often" had "deficiencies of

concentration, persistence or pace," but the claimant argued that those deficiencies were not

accounted for in the RFC or hypothetical question. 92 F.3d 688, 695 (8th Cir. 1996). The Eighth

Circuit rejected the Commissioner's argument that the inclusion of "a capacity for simple jobs"

adequately described the deficiencies at issue. Id. at 695. On remand, the Court directed that any

hypothetical question "should include [the claimant's] deficiencies of concentration, persistence, or

pace so that the vocational expert might accurately determine his ability to work." Id. Similarly,

in the present case, the ALJ's limitations of "no complex tasks" and "only simple, repetitive tasks"

are insufficient to capture the concrete consequences of plaintiff's moderate limitation in

maintaining concentration, persistence or pace; the same is true of the remaining non-exertional

limitations in the RFC. Therefore, the court finds that ALJ erred by omitting from the RFC any

limitation that would capture plaintiff's concentration, persistence or pace deficiencies.[4]

Plaintiff also argues that the ALJ's RFC disregarded (without explanation) various functional

limitations set forth in the opinions of certain consultative psychologists, most notably the opinions

Dr. Robert Pulcher, Ph.D., who conducted a consultative psychological examination of plaintiff on

April 4, 2002. Tr. 359-70. As mentioned earlier, he administered the Wechsler Adult Intelligence

---

[4]Some examples of such limitations may be useful. In Roe v. Chater, the Eighth Circuit found that limitations including an inability to do work "requiring constant, close attention to detail"; a requirement of "occasional supervision"; and an inability to work "at more than a regular pace" sufficiently captured the functional consequences of the claimant's "deficiencies of concentration, persistence, or pace." 92 F.3d 672, 676-77 (8th Cir. 1996).

Scale-III (WAIS-III), which indicated I.Q. scores for plaintiff of 75 for verbal, 87 for performance, and 79 for full-scale. Tr. 361. Dr. Pulcher stated that plaintiff's verbal and full-scale scores "place her within the Borderline Intellectual Functioning level of intelligence," defined as I.Q. scores ranging from 71-84. Tr. 362. In addition to I.Q. findings, Dr. Pulcher diagnosed plaintiff with depressive disorder not otherwise specified and generalized anxiety disorder. Tr. 363. He also completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental) as part of his evaluation. Tr. 364-65. Among his findings, he opined that plaintiff had moderate difficulty in understanding, remembering and carrying out detailed instructions. Tr. 364. He also opined that she had moderate difficulty interacting appropriately with the public and supervisors, responding appropriately to work pressures in a usual work setting, and responding to changes in a routine work setting. Tr. 365.

Although the ALJ's RFC contains limitations accounting for plaintiff's deficiencies regarding detailed instructions and interaction with the public and supervisors, the RFC does not contain any limitations addressing plaintiff's deficiencies in responding appropriately to work pressures and responding to changes in a routine work setting. An ALJ is warranted in discrediting some of a physician's opinions when they are inconsistent with or contradicted by other evidence in the record. Weber v. Apfel, 164 F.3d 431, 432 (8th Cir. 1999). Here, however, the ALJ provides no explanation for why he included some of Dr. Pulcher's limitations while excluding others, and the record does not reveal that the excluded limitations are contradicted by other medical evidence. Therefore, the court finds that the ALJ erred in disregarding those limitations when formulating the RFC.

In sum, the court finds that the ALJ's formulation of the RFC was not supported by

11

substantial evidence on the record as a whole.  Thus, the RFC formulation was in error and should be reconsidered on remand.

### B.     Other Points of Error

Plaintiff also argues that the ALJ erred in giving no weight to the vocational expert's testimony at the first hearing that a moderate degree of limitation in concentration, persistence or pace would preclude all work.  In that hearing, plaintiff's attorney relied on Dr. Pulcher's limitations in posing her question to the vocational expert.  This argument is closely related the arguments discussed at length above.  As noted, the court finds error in the ALJ's RFC formulation and is remanding that case on that basis.  During the remand, the ALJ should carefully review all the evidence in the record, including vocational expert testimony from the first hearing.

Although not raised by plaintiff, the court finds that the ALJ also erred in his construction of the hypothetical posed to the vocational expert.  Tr. 499.  Because the ALJ found at step two of the sequential analysis that plaintiff's borderline intellectual functioning was a severe mental impairment, that impairment should have been included in the ALJ's hypothetical.  See Hunt v. Massanari, 250 F.3d 622, 625 (8th Cir. 2001) ("A hypothetical question posed to the vocational expert is sufficient if it sets forth impairments supported by substantial evidence in the record and accepted as true by the ALJ."); Lucy v. Chater, 113 F.3d 905, 908 (8th Cir. 1997) ("We have previously concluded that borderline intellectual functioning, if supported by the record as it is here, is a significant nonexertional impairment that must be considered by a vocational expert."); Hinchey v. Shalala, 29 F.3d 428, 432 (8th Cir. 1994) ("Testimony based on hypothetical questions that do not encompass all relevant impairments cannot constitute substantial evidence to support the ALJ's decision.").  The ALJ's failure to include borderline intellectual functioning in the hypothetical was

12

error. Consequently, further proceedings are needed to determine the effect of plaintiff's borderline intellectual functioning.  See Hunt, 250 F.3d at 626.

On remand, the ALJ should reconsider his formulation of the RFC, reconsider his construction of the hypothetical question in light of the new RFC formulation (making sure to include borderline intellectual functioning), and then make a new disability finding for the period from January 1, 2002 forward.[5]

## IV.     Conclusion

Based on the foregoing discussion, it is hereby

ORDERED that plaintiff's motion for summary judgment (ECF doc. 7) is GRANTED.  The decision of the Commissioner is reversed and this case is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for reconsideration and further proceedings consistent with this order.  The clerk is directed to enter judgment for plaintiff and against defendant.

/s/ Howard F. Sachs
HOWARD F. SACHS
UNITED STATES DISTRICT JUDGE

September 26, 2006

Kansas City, Missouri

---

[5]The evidence of record strongly supports a finding of disability for the closed period of June 10, 2000 through December 31, 2001, and the two previous ALJs both awarded benefits for that period.  Therefore, on remand, the ALJ is not required to make a new disability determination for that closed period.

13